**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**Case No. 5:19-cv-00009**

THOMAS EDWARD BURKE                                                                                          PLAINTIFF

v.

DeEDRA HART, *et al*                                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendants, DeEdra Hart, Will Lynn, Amy Fisher, James Harris, and Bruce Von Dwingelo, (collectively, "Defendants") Motion to Dismiss/Motion for Summary Judgment. [DN 35.] *Pro se* Plaintiff Thomas Burke ("Burke") filed a Motion to Dismiss Defendants Motion to Dismiss/Motion for Summary Judgment in lieu of a response. [DN 39.] Defendants responded to Burke's Motion to Dismiss. [DN 41.] Burke subsequently replied. [DN 43.] As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss/Motion for Summary Judgment [DN 35] is **GRANTED**. Burke's Motion to Dismiss Defendants' Motion to Dismiss/Motion for Summary Judgment [DN 39] is **DENIED**.

**I.  Background**

Burke is an inmate at Luther Luckett Correctional Complex. He filed the current suit alleging failure-to-protect claims under the Eighth Amendment and state-law claims of negligence, assault and battery, and intentional infliction of emotional distress. The Court also construed the complaint as containing a retaliation claim under the First Amendment. [DN 17.] Burke alleges on August 25, 2018, inmate Sean Nokes "was heard loudly vocolizing his personal disdain" for Plaintiff and another inmate, who were sitting on the wall by form 6-Cellhouses entrance, and told Plaintiff "'Gonna gitcha Burke . . . Gonna cut ya deep!'" (ellipsis by Plaintiff). Plaintiff claims that

later that day, he was "viciously attacked" by Inmate Nokes, who stabbed him "five times, 4 times in the head and 1 time in the shoulder." He claims that Defendant Lynn knew that there was a substantial risk to Plaintiff's life and failed to protect him.

Burke additionally claims that Defendants Warden Hart and Caseworkers Fisher and Harris "knew through prison records that inmate Sean Nokes had attacked other prison inmates but failed there duties to protect other inmates and [Plaintiff] from harm" and "knew . . . that there was a substantial risk to inmates on the prisons yard when they repeatedly released Sean Nokes from segregation after he has attacked other inmates."

Burke alleges he was assaulted a second time on December 31, 2018, by Inmate Zacharus Bishop during lunch. Burke reports that he was sitting at a lunch table in the dining hall when Inmate Bishop told him to get up because he wanted to sit there. Burke reports that when he declined to leave, Inmate Bishop dumped Burke's food tray, left the table, and went to the outside area of the picnic tables under a pavilion. Plaintiff reports going to the pavilion where Inmate Bishop and other inmates were standing and asking why Inmate Bishop dumped his tray. Burke states, "But, this is when [] Bishop[] grabed [Plaintiff] and slung him to the ground and started to beat him in the head. As Guards responded, [] Bishop [] leaves the area." Thereafter, claims Burke, both he and Inmate Bishop were taken to administrative segregation.

Burke claims that "Prison Guards and staff knew that there would be a substantial risk" to Plaintiff's "life, that he would be seriously harmed" and further that "Prison Guards and staff" failed to respond reasonably to protect Plaintiff," because when they saw Inmate Bishop attack Plaintiff "during the Lunch time meal . . . they just stood there and done nothing."

Burke also alleged, "I was Released from my Job because I filed This Complaint in This Court," which the Court construed as a First Amendment retaliation claim.

On initial review, the Court allowed Burke's Eighth Amendment, failure-to-protect claims with respect to the KSP assaults against Defendants Hart, Lynn, Fisher, and Harris in their individual capacities for damages and the state-law claims of negligence against Defendants Hart, Lynn, Fisher, Harris, and Von Dwingelo and of intentional infliction of emotional distress against Defendant Lynn to continue. The Court also allowed Burke to file an amended complaint to name the person(s) allegedly responsible for his termination from his job in retaliation for filing this lawsuit and providing details surrounding that claim and any other staff or guards or other persons that he alleges were involved in his federal and/or state-law claims surrounding his assaults and providing details surrounding those claims.

Burke filed an Amended Complaint and the Court again conducted a review. Burke added Sean Nokes, the inmate who Burke alleges assaulted him during the first failure-to-protect incident, to assert state-law claims of assault, battery, and intentional infliction of emotional distress against him. Burke also alleges that he told Defendant Vondwinglo "of the assaults before they happened, but [that Vondwinglo] failed to do anything about them. Thus, Vondwinglo was negligent to inmate Burkes need!" The Court construed this allegation as both an Eighth Amendment, failure-to-protect claim and a state-law negligence claim. Finally, Burke additionally alleges that Defendants Fisher and Harris retaliated against him by releasing him from his job in the garment plant when he filed the complaint.

## II. Legal Standard

Defendants have attached extensive documentation to their Motion to Dismiss to support their claim Burke failed to exhaust his administrative remedies. Burke argues he has not had access to discovery. However, the issues raised in Defendants' Motion are purely issues of law. Therefore, the Court will construe this motion as a Motion for Summary Judgment.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonable find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

### III. Discussion

**A. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion

is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones*, 549 U.S. at 218-19. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). However, "failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel Cty. Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing Jones, 549 U.S. at 204).

Here, Defendants allege Burke did not file a grievance regarding the first or second alleged assault. In response, Burke argues being stabbed by an inmate is a non-grievable issue and he did not have access to a grievance form because he was in segregation.

The Grievance Coordinator, Roger Mitchell, has stated that there are no grievances on file pertaining to the claims in this action. [DN 35-3 at PageID 214.] Burke does not refute the fact that he did not file a grievance. The Court disagrees with Burke that this was a non-grievable issue.

In *Shoults v. White,* Shoults was attacked by another inmate. 2018 WL 4761659 *1 (W.D. Ky Oct. 2, 2018). He alleged officers "placed restraints on another inmate incorrectly so that the inmate would be able to free himself of the restraints and attack Plaintiff." *Id.* He sued for failure to protect. *Id.* The Court found Shoults properly filed a grievance alleging an officer improperly restrained the other inmate and failed to protect him. *Id.* at 2.

In *Sublett v. White,* Sublett alleges he informed Defendant "Wilson that a level five (5) inmate who was in a white supremacist gang threatened to kill him with a "shank" should he come out for recreation and that all Wilson did was inform his supervisor." 2014 WL 798156 *6 (W.D. Ky. Feb. 27, 2014). Sublett did not "produce or allege that he submitted a grievance related to this

particular incident or even one that generally addressed officers failing to protect him." *Id.* However, he alleged it was a non-grievable issue. *Id.* The Court found that Sublett was required to exhaust all claims of failure to protect except the denial of protective custody. *Id.* at 7.

Shoults and Sublett were bound by the same Corrections Policy & Procedure ("CPP") that Burke is bound by here. Therefore, Burke could have and was required to file a grievance related to his failure to protect claim. Because Burke did not file a grievance related to either attack, he has not exhausted his administrative remedies and his claims under 42 U.S.C. § 1983 must be dismissed.

Burke next argues he did not have access to the Legal Office to file a grievance because he was in segregation from December 31, 2018 to January 10, 2019 and February 20, 2019 to March 21, 2019. [DN 39 at PageID 248.] He also states, "segregation officers [said] there is no need to file [a] grievance that is non-grievable". [*Id.* at PageID 250.]

Burke does not allege he was unable to file a grievance regarding the attack by inmate Nokes on August 25, 2018 due to being in segregation. Grievances must be filed within five business days of the incident. [DN 35-2 at PageID 200.] Therefore, Burke's placement in segregation on December 31, 2018 was not an obstacle to filing a grievance regarding the August 25, 2018 incident.

Burke's placement in segregation also does not cure his failure to file a grievance regarding the December 31, 2018 incident. The grievance process is unavailable to inmates "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016).

CPP 14.6 (II)(H)(3) states, "[t]he [grievance] aide shall be accessible to the general population and shall follow staff instructions concerning providing access or visits to specialized

6

units, such as segregation." [DN 35-2 at PageID 198.] Grievance Coordinator Mitchell states forms are provided to inmates in segregation and he receives those grievances regularly. [DN 41-1 at PageID 262.] Further, Stacey Gibson, Unit Administrator of 7 Cell House Restrictive Housing Unit (segregation), stated "Classification and Treatment Officers (CTOs) make daily rounds in the RHU and check on the status and welfare of each inmate housed on the Unit. During those rounds, the CTOs provide the inmates with various forms they might request such as grievance forms". [DN 41-2 at PageID 264-165.] Unit Administrator Josh Patton confirms this process in his affidavit. [DN 41-3 at PageID 267-268.] In Burke's reply, he does not refute Gibson's claim that CTOs make daily rounds and provide grievance forms to inmates. He only argues Gibson does not make daily rounds herself. [DN 43 at PageID 275.] However, Gibson did not claim she makes daily rounds. Therefore, Burke being placed in segregation is not *per se* a bar to filing. Without more evidence, Burke has not met his burden in arguing he was denied access to the grievance process.

Burke also alleges he was told by segregation officers that this incident was a non-grievable issue. In *Odom v. Helton,* Odom filed two grievances with the Grievance Coordinator Sarah Potter. 2013 WL 4012889 *2 (E.D. Ky. Aug. 6, 2013). Potter returned both grievances because Odom was under "a grievance restriction which permitted him to file only one (1) grievance every ten days". *Id.* at 3. Odom instead re-submitted both grievances and asked Potter to reconsider his grievance limit. *Id.* Those grievances were not filed because of the grievance restriction. *Id.* Odom argued Potter's refusal to accept both grievances was unreasonable. *Id.* Prior to filing the grievances, Odom states he asked Lieutenant Hill if he could allege both issues on one grievance form. *Id.* Hill told him policy prohibited doing so and Odom filed two grievances. Odom argued he relied on Hill's advice so his grievances should have been accepted. *Id.*

7

However, the Court found, "Odom's alleged reliance on verbal representations from someone who worked in the prison, who was *not* the prison's designated grievance coordinator, was simply unreasonable." *Id.* at 8. Here, Burke relied on verbal representations of segregation officers. He does not claim that Grievance Coordinator Mitchell told him he could not file a grievance regarding this issue. Therefore, his reliance on this statement was unreasonable. Due to Burke's failure to exhaust his administrative remedies, his federal claims must be dismissed.

## B. *Res Judicata*

The doctrine of res judicata prohibits a plaintiff from relitigating a claim that was asserted or which could have been asserted in earlier litigation against the same defendants or their privies. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981); *United States v. McMichael*, 525 F. App'x 388, 392 (6th Cir.2013). Where jurisdiction in the prior litigation was based on a federal question, a federal court applies federal law in determining the preclusive effect of a prior federal judgment. *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n. 12 (1971) ("It has been held in non-diversity cases since *Erie R. Co. v. Tompkins*, that the federal courts will apply their own rule of res judicata.") (internal quotation marks and citation omitted)). The elements of res judicata are: "(1) there is a final decision on the merits of the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims." *Walker v. General Tel. Co.*, 25 F. App'x 332, 336 (6th Cir.2001) (per curiam).

### 1. Failure to Protect Claims Against Defendants Hart and Von Dwingelo for Sean Nokes attack

Defendants argue Burke's Eighth Amendment claims against Defendants Hart and Von Dwingelo must be dismissed because it has already been decided by the Lyon Circuit Court. Burke did not address this argument.

Burke filed suit against James Erwin, Defendants Hart and Von Dwingelo, Nancy Raines, and Guards and Staff in Lyon Circuit Court. [DN 35-5- at PageID 217.] In that suit, Burke argued those defendants failed to protect him from the assault by inmate Sean Nokes. [*Id.* at PageID 219.] Burke brought that case under 42 U.S.C. § 1983. [*Id.* at PageID 216.] The Circuit Court dismissed Burke's claims due to failure to exhaust administrative remedies and failure to state a claim for which relief may be granted. [DN 35-7- at PageID 235.]

The Circuit Court decision was a final decision on the merits. Therefore, the first element is satisfied. DeEdra Hart and Bruce Von Dwingelo were defendants in the Circuit Court case and are defendants in the current action. The same parties are involved so the second element is also satisfied. This action asserts some of the same claims litigated in Circuit Court. In Circuit Court, Burke alleged the defendants failed to protect him from inmate Nokes on August 25, 2018 when he was attacked. Burke has brought the same claim in the present action. The third and fourth elements are also satisfied. As such, this matter has already been litigated and *res judicata* applies.

**2. Burke's Retaliation Claim**

In the current case, Burke has claimed Defendants Fisher and Harris retaliated against him by releasing him from his job after filing a complaint. In a separate case before this Court, Burke alleged Fisher and Harris retaliated against him for filing a lawsuit in Lyon Circuit Court. [Civil Action No. 5:19-cv-00010-TBR (DN 15).] In that case, Fisher and Harris filed for Summary Judgment and it was granted. [Civil Action No. 5:19-cv-00010-TBR (DN 48).]

The Court dismissed Burke's claim because he could not meet the elements required for a retaliation claim. [*Id.*] This is a final decision on the merits. The same parties were involved because Fisher and Harris are named in both actions. Burke claimed in both actions that Fisher and Harris retaliated against him for filing suit. Therefore, all elements of *res judicata* are met and this claim must be dismissed.

### C. State Law Claims

Burke has also brought state law claims of negligence against Defendants Von Dwenglo, Hart, Lynn, Fisher, and Harris, intentional infliction of emotional distress against Defendant Lynn, and assault, battery, and intentional infliction of emotional distress against Defendant Nokes.

18 U.S.C. § 1367(c) states in relevant part:

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(3) the district court has dismissed all claims over which it has original jurisdiction".

Since this Court has dismissed Burke's federal claims, it will decline to exercise supplemental jurisdiction over his state law claims *See Wee Care Child Ctr., Inc. v. Lumpkin,* 680 F.3d 841, 849 (6th Cir. 2012); *see also Polk v. Jones,* 2020 WL 2203839, * 6 (W.D. Ky. May 6, 2020). Accordingly, the Court will dismiss Burke's state-law claims without prejudice.

### IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that:

1.) Defendants' Motion to Dismiss/Motion for Summary Judgment [DN 35] is **GRANTED**.

2.) Burke's federal claims under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**.

3.) Burke's state law claims are **DISMISSED WITHOUT PREJUDICE**.

4.) Burke's Motion to Dismiss Defendants' Motion to Dismiss/Motion for Summary Judgment [DN 39] is **DENIED**.

A separate judgment will follow. **IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge
United States District Court**

August 7, 2020

cc: Thomas Edward Burke, Jr.
    183573
    LUTHER LUCKETT CORRECTIONAL COMPLEX
    P.O. Box 6
    LaGrange, KY 40031
    PRO SE